The next matter on our calendar is Adler v. The Province of Mendoza. Thanks, can I get a sticky? A little packet of stickies. Good morning, your honors. May it please the court, my name is David Hoffner, I represent plaintiff appellant Moshe Marcel Adler. Mr. Adler was the original purchaser in 1997 of just more than $7 million principal bonds paying 10% interest issued by the Province of Mendoza. He was one of the very few investors in the $250 million offering who did not agree to the Province's 2004 exchange offer to replace his bonds with ones that paid lesser interest. Thereafter, Mendoza defaulted on appellant's bonds and to this day has not paid any of the principal or any interest on the bonds since that time. But the indenture of the bonds required that Mendoza make biannual interest payments, quote, until payment of the principal has been made, close quote. And on certification from this court in the Argentina litigation, the New York Court of Appeals and NML Capital held that such language means what it means. That the promise to pay interest until principal is paid is enforceable and requires the maker to continue to pay interest payments even after the maturity date. Forever, even though the principal can't be sued on anymore because the statute's run. But those interest payments could be sued on forever, for the next 100 years, is that right? We read the NML opinion to not lead to that conclusion. The court cites a New York Court of Appeals case from 1884 that says, until the principal is paid or the contract is merged in a judgment. So it is our position that once this case is concluded, that that would foreclose any- This case? This case for the interest? Once this case is concluded? Yes, Your Honor. But you have a right to keep suing every six months, don't you? It is our position that that case would foreclose that possibility. That once this case results in a judgment, pursuant to that New York Court of Appeals case, cited by the New York Court of Appeals and NML Capital, we have finality at that point. I understand your adversary's position, I'm sure they'll correct me if I've misunderstood. Their view is that the right to continuing interest payments is inextricably linked to the principal obligation, such that when the principal obligation can no longer be enforced because the statute of limitations has run, whether we're talking four years or six years, that the ability to keep pursuing interest obligations also terminates. Tell me why you don't think that, because the New York Court of Appeals did not speak to that question in the Argentina litigation. That's correct, Your Honor. It did not need to. We shouldn't embrace that view of the law. Okay, well first of all, the district court held a little bit more. It actually held that once a claim for principal becomes time barred, it extinguishes all claims for interest, even if they've already been accruing, and even if that statute of limitations has not yet run. And I think even Mendoza recognizes that the district court got that wrong. The statute of limitations had not run on the interest or on the principal? On the interest payments. So an interest payment that had accrued a year before, for example, the principal becomes time barred. But in your case, you don't sue until some ten years after the principal was due, isn't that right? So, I mean, let's not talk about what of your claims might be viable. Are you disputing their view that the principal obligation, or the interest obligation doesn't go on forever? It ends when the statute of limitations on the principal ends. Absolutely, that is not New York law. They claim it is- Tell me why, because I don't think that New York has spoken clearly on that subject, and I need you to help us out. Okay, well they claim it's black letter law. All they have is a cite to Williston and a CF cite to a 1950 New York trial court decision that relies on a Delaware statutory interpretation. New York juror's second, interest and usury, says it quite clear. It's explicit. It says that if the contract provides for post-maturity interest, then it is quite clear that the separate action may be brought for default in post-maturity interest, even though recovery of the principal of the debt is barred by the statute of limitations. And they have no response to that. That's what New York juror says. Let's go back to where we started with the question of Judge Droney. When does it end? How long can you sue? Assuming that you're correct in your interpretation, that you can sue even after the principle is barred by statute of limitations. How long can you sue on the interest? Well, I understand that the district court was uncomfortable with the concept that the interest would accrue indefinitely. But that, frankly, is what the province of Mendoza promised to do. They promised, when they borrowed Mr. Adler's money- It would be forever, is your answer. Is that it? The interest would accrue indefinitely if no claim was brought. But here- Only for the interest of the past four or six years, or what? Only for the interest for the past four or six years. And that cuts off- Always sue for the immediate four or six years, depending- That's our position, Your Honor. And that cuts off any claims for interest in the future. That would be our position, that once you've- that's all merged in a judgment as the O'Brien case, the 1884 O'Brien case makes clear. They can either, if they want to end this, they can pay the principal, which frankly would be less expensive than all this accrual of interest at this point in time. I don't get why this case would end it, then, in your theory, though. Why couldn't you sue in this case and then six years from now sue, or ten years from now sue for more interest payments that go back, say, four years? Because I view the Court of Appeals citation to the O'Brien case and the NML Capital case to provide a method of finality. It says that either the principal is paid or the contract is merged in a judgment. And so here, it is our position that when this case is- But would you agree with Judge Raggi that NML Capital has nothing to do with statute of limitations? It doesn't address the statute of limitations because it wasn't an issue in that case. But the point that's primary here is that it endorsed and it espoused a clear New York policy in favor of the payment of interest post-maturity. Those are what the words, the magic words that are in this indenture and require the Mendoza to continue to pay interest. That case involved a timely claim on the principal. And so what we don't know is how the New York Court of Appeals would view the interest question in the absence of a timely claim on the principal. That is correct, Your Honor. The court did not have the opportunity to opine on the issue. I will say that the underlying, additionally, the fundamental underpinnings of New York law support that there should be no connection between a principal claim and the interest claim here. Statute of limitations is an affirmative defense, a mere procedural barrier. And this court made clear in Cloverleaf Realty that it doesn't extinguish the underlying obligation. So if the underlying debt continues to exist, why can it not continue to accrue interest as provided for by the province of Mendoza? Here the underlying debt does not continue to exist because the statute of limitations has run on collecting that debt, hasn't it? I don't think that's New York law. New York law says it's vulnerable to an affirmative defense of statute of limitations. That is a procedural barrier. As this court said in Cloverleaf, it does not extinguish the underlying obligation. That debt as a corpus should continue to exist and should continue to be able to accrue interest. It doesn't evaporate. It can't be sued on once the statute of limitations has expired. The remedy is subject to an affirmative defense. It can be sued on, but it cannot be ultimately collected because it's vulnerable to an affirmative defense. But that does not, under longstanding New York law, eviscerate the underlying obligation so it can continue to accrue interest. This starts to become an absurd result. You suggested that a judgment extinguished, but the judgment would only be on the interest for the past, we'll use your period, six years. Within six years of that, you could bring another claim. Could your heirs then bring a claim? I mean, this really could go on in perpetuity. And that seems to be an absurd result, which the law generally abhors. But we would not, it is not our position that we would be able to come back and double dip or come back for more interest. We have to find a principled basis for that, and I'm not sure I see how consistent with what you're arguing. We have anything other than a debt that even though it's barred by the statute of limitations, continues to establish interest obligations forever. I'm quoting from the New York Court of Appeals in the NML cases. It says, when the party's directed interest on principle accrues at a particular rate until the principle shall be paid, this extends the effectiveness of the contract's interest rate provision beyond the date of maturity so that it, quote, governs until payment of the principle or until the contract is merged in a judgment, quoting the O'Brien case. So there are the two alternatives that the New York Court of Appeals provides. The contract is merged in the judgment. You're only suing for interest payments. It doesn't extinguish the debt under your theory. The debt would be ultimately all subsumed in a judgment. That's what the Court of Appeals is saying. There are two outcomes here. Otherwise, it's an- Are you saying that six years of interest, which is what you're saying you're entitled to sue for, is more than the principle that's due now? No, it's not. There's $7 million in bonds. It's not how they would pay you the principle because it was less than the interest that was owed. But six years of interest, if that's all you can sue for, isn't the equivalent of the outstanding debt? That's true, Your Honor. I mean, arguably, we would be entitled to interest that is accruing during the pendency of the case as well. I see. Thank you, Counsel. You've reserved two minutes for rebuttal. Thank you. We'll hear from the Republic, the Province of Mendoza. Thank you, Your Honor. Carmine Bacuzzi from Cleary Gottlieb for the Appellee, the Province of Mendoza. The district court was correct, and I think he started at the right place, going back to first principles. He cited the White Hawthorne case, which in turn cited the old New York case of Knapp versus Green. And it talks about when does a cause of action accrue for purposes of the statute of limitation. And the quote is, a cause of action accrues for the purpose of setting the statute in motion as soon as the creditor by his own act, and in spite of the debtor, can make the demand payable. So here, upon maturity of this bond in 2007, the creditor, the plaintiff, had the right to bring forward a claim for principle plus all interest owing until the principle was paid. And how do we know that? We know that because in the indenture at 4.6, which is at A33 of the appendix, which he cited in his complaint, and which Judge Marrero cites in his decision, says each bondholder shall have the right to receive payment of the principle of and interest on its bonds on the stated maturity in such bond, and to institute suit or the enforcement of any such payment. Weren't all the interest payments in White Hawthorne before the date of maturity? All the interest payments? No, because that also had the until paid language, and so you had a bond that had been accelerated, and so you would have had, following NML, an obligation on the part of the Republic to continue to pay interest at the contractual rate. I'm just talking about White Hawthorne, though. My understanding of that case is that those were all interest payments that were missed before the maturity date arrived. There was one accelerated bond, the Brady Bond, which the judge talks about. But you're right, White Hawthorne did not get into the back and forth that we're on here today. But the important thing for White Hawthorne, and for what the judge did below, is to focus on when this claim accrues. And if your honor also looks at the indenture section 4.1, which is at A31 of the joint appendix, it says the province covenants that, and there's an A and a B. And the B says, in case there shall be a default in the payment of all or any part of the principle of any of the bonds, when the same shall become due and payable upon maturity or acceleration, the province shall pay the whole amount that then shall have become due and payable on all such bonds, as the case may be. And then, with interest to the date of such payment upon the overdue principle, and to the extent enforceable interest on that interest. So again, it's clear from the document here, the governing document, that the right to make this claim for this interest that was due on past due principle, crystallized at maturity. And so from then, the statute begins to run under basic black letter New York principles. Let me ask you one thing I don't quite understand about that. There seems to be New York law that if you had a situation, like you're saying, principle not paid, interest not paid, so you can now sue. If you timely sue, you get to keep collecting interest through the day of judgment. The interest obligation is not frozen at the time the principle becomes due. Have I correctly understood? That I think is- How does that fit with what you've just read to us? Because what that means, that's the situation of NML. So you have debt maturing or being accelerated by a creditor. At that moment, then the clock begins to run for you to do something under your statute of limitations or here your contractual prescription period. So you have to bring that claim, and that claim is going to be, because no one sues on the immediate day of default. It'll be maybe a year later, 60 days later, whatever it is. And then at that point, you're suing for the principle, and then you're also saying as well as all interest, as it says in this document, all interest that is accruing on that principle. And it continues to run until the court enters a judgment. And so that is how the suit is resolved, and that is what NML did. But that is what this plaintiff has not done, because the maturity date came and the plaintiff did nothing for a decade. And the further important language is in the terms and conditions of this bond, section 15, which is A68 of the joint appendix. And it says very clearly, all claims against the province for payment of principle of or interest shall be prescribed unless made within four years from the date when such payment first became due. Is this a scrivener's error? Should it have been proscribed? No, prescribed is in a prescription period. So there's some, I think this is a broadened, the statute of limitations is often sometimes referred to as a prescription period. And we cite Black's Law Dictionary, which says, I don't think this is, we need this for purpose of this appeal. A prescription period actually extinguishes the right, not just the remedy. When you think about a statute of limitations, what Mr. Hoffner was saying, that the statute of limitations just takes away the remedy and not the right. The prescription period goes further and removes the right. I don't think that's either here or there for purposes of this appeal. Was this then accelerated? There was an acceleration, we raised that in our motion before the judge. He said that really raised a factual issue. He was not interested though. He said I don't need to get there, because if you've got the four year prescription period or the six year statute of limitations, these claims are time barred. But recognizing the acceleration period, which the court did in White-Hawthorne, would mean that the statute ran even sooner, because the acceleration happened in 2004. But again, that's neither here nor there, given that- Did you put in proof of the acceleration, or was there any proof? I know the judge was not interested in it, but did you put in any documents? It was a motion to dismiss, Your Honor, so I was only able to reference the fact that it happened, and I think that's why the judge said we can just look at the maturity date, and we don't have to get into issues of acceleration. But that would be an issue if folks didn't think what's presented here is dispositive of these claims. But this result, which when you read the actual document, the indenture, the terms of conditions shows when their right accrued, and therefore that start at the clock. And that's Knapp versus Green, that's the Environics case that is cited in our brief. And they're all of a piece with the common sense principle that Williston articulates, and that's in the brief, that when the principal debt is barred by the statute of limitations, the claim for interest, whether contracted for or not, is also barred. And that makes sense, Judge Droney, because otherwise we get into the forever problem. The Schmidt versus Poland case illustrates that exactly. A case brought in the Southern District of New York in 1982 on Polish bonds that went into default in 1939. That bond had the until paid language. The court admittedly didn't get into the arguments we're hearing today. However, it found the claims time barred. And that has to be the right result, because as this court recognized in NML, the until paid language is quite common in debt. So you can imagine a holding, the way plaintiffs are asking the court to find, would mean that all of a sudden, bonds from the 1930s, bonds from the 1940s. Plaintiffs would be showing up and say, this bond has long since expired and time barred, but I get the last six years of interest preceding this lawsuit, thank you very much. That can't be the right result. And I don't think- That appears to be what they were saying in NML. No, no, your honor, that's not. NML was simply answering the question whether the Argentine government was saying that all we owe as a matter of pre-judgment interest is interest at the contract rate. Because the until paid language simply is saying, when thinking about pre-judgment interest, you the courts use the contract rate as opposed to the CPLR 5001 statutory rate. NML said, no, the until paid language means that that obligation to pay interest itself is a contractual obligation, so it can then bear or have applied to it the 9%, 5001 CPLR, 9% statutory rate. That's all it held. It said that that is a function of the contract and therefore can draw that extra interest. It did not say when that claim accrues as a matter of the statute of limitations. And again, NML was timely. NML brought their claim, and so it shows people know how to do this, and they know how to follow the way these things work, which is maturity or acceleration hits. You bring your claim within the statute of limitations or prescription period. That claim, and it says it very clearly here, is principal and all interest accruing until the payment of my principal occurs. And so that's what happened. NML didn't say anything about statute of limitations running forever or this creating claims in perpetuity. None of that came up. And in fact, I think one example that further shows that is since NML has been decided, no court has ruled and extended NML the way plaintiffs are arguing here. And again, that takes us back to- But neither has the court gone the other way. I mean, they just haven't dealt with the issue, right? I would say, right, there hasn't been a clear holding other than in this case, but you're reviewing this. But if you go back to White-Hawthorne and what it did, and what the court did here, you still have to start somewhere, where did this claim and when did this claim accrue? And the indenture language makes clear it accrued upon maturity, and that's why the interest claim follows the principal claim. I understand it could be, one wades through all these cases, and they're old cases, and again, the alternative he falls back on is from a realm of mortgage cases from the 30s and the 40s that derive from moratorium law. And so there's a lot of stuff out there, and you say, where is the exact match? We think there is a match if you look at the cases concededly out of this district. The cases that we cite, In re Hall, Yadin, and Clark, and the Yadin case is cited in the Tortora case, which also states that Williston principle about interest going with the principle, if one's time barred, the other follows it. So I think it's all there in black letter New York law, and I think if you do the analysis that the district court did, which is when did this claim accrue, look at the indenture language. It clearly accrued upon the maturity of the principle, then you would affirm the district court's ruling. You think we should ask the New York Court of Appeals to help us out here? I don't think so, Your Honor, because again, in the classic case, you find case law on the specific question that's all over the map. And here, again, no one is interpreting NML in this way. It's not like the standard charter case where there was a- The plaintiff is interpreting it here in this case. But there's usually you've got, for example, in the standard charter case, where there's a question about whether Kohler, that decision on the turnover statute, got rid of the separate entity rule. You had decisions in the New York state and federal courts that were all over the map, so it was clearly ripe for certification. New York Court of Appeals, please decide. But when here, you've got no support for his position, and you've got sort of basic application of the basic rules for ours, and no court applying NML as he would say it, I would think that it's not necessary to certify. The Justice says he does have support in New York jurisprudence, and that you've never addressed that statement in New York jurisprudence. Do you want to- That New York jurisprudence- Sure, Your Honor. That cites at least one case, I think that's cited in that provision, is the Union Trust Company of Rochester versus Kaplan case. This is one of those cases I was describing earlier about being about mortgages, and specifically the enactment in 1933 of the Moratorium Act. And the enactment of that by the New York State Legislature, which prevented foreclosures for the person paid interest and taxes, basically had the effect of divorcing the requirement to pay principal from the requirement to pay interest and taxes. And so you have a series of rules and decisions that come up in that context. So the interest obligation still lives, whereas the principal obligation is something that can't be enforced or has been stayed by the New York legislature, and said, look, it looks like the principal claim, you can't bring it or it's otherwise time barred, but you still have this interest obligation. Very different situation here, and in fact, that Kaplan case specifically says, this is not the case of an ordinary promissory note without security. So in other words, those cases are clearly limited to that area of the law, the mortgage realm, in a specific period. I also don't think any of those cases go past the period of the late 1950s, because again, the moratorium statute went into effect in 1933, was revived in 46, and then went away. So it's- Was it ever repealed? Excuse me? Was it ever repealed? Yes, I think it was repealed. It was renewed until July 1st, 1946. And then it wasn't renewed again, but was it repealed? That I don't know, Your Honor, I don't know. But I would just say, if you look at those cases, you see they're very inapposite to the situation we have here. We don't have that split between the obligations, and we have contractual language that very clearly says, once principle matures, if you're not paid, that's the time to ask for principle and all interest that's accruing. And it's gotta be the case, because otherwise you get into the infinity bond situation that you were all grappling with earlier. I think opposing counsel answered the infinity question quite well. Said once I sue and get my four or six years of interest, that's the end of the case. It's nice for him to say that, but then after the judgment is entered and six years passes and someone comes along and says, well, merger, as the Second Circuit has held, is only a species of res judicata. And res judicata only brings claims that were brought or could have been brought. Well, I couldn't have brought these claims for interest, because they accrued after my judgment on his theory. So there is no limiting principle. There's no principled basis to accept his theory, unless you go with the infinity bond concept, and that has clearly never been a part of New York jurisprudence. A good way to end. Thank you, Kate. Thank you. Mr. Huffner? Tell me why you couldn't sue again in six years. Because that's what the principle enunciated by the New York Court of Appeals in ML Capital citing to the O'Brien case. It says, pay the principle or the contracts merged in a judgment. Those are the two alternatives for resolving the case. Let me make, I want to point out a very important admission that you just heard from Mr. Bacuzzi, and that is White Hawthorne has nothing to do with the facts of this case. Notwithstanding that, he told the district court that it had already reviewed our argument here today about the continuing accrual of interest, and quote, unquote, rejected it. And the district court relied, and Mr. Bacuzzi was counsel for Argentina in the White Hawthorne case. So the district court relied on that representation, and it was not, in fact, the case. And so that's quite important for this court to understand, because that really pulls out the rug from the underpinnings of the district court's legal analysis. In addition, Judge Pooler, I want to point out, under NML Capital, even if there was acceleration in this bonds, they would continue to pay interest post-maturity, so I think that's not an issue here. So do you think we should certify these questions? I think one thing is clear from this and that is, I think we have a significant amount of law supporting appellant's view here. Certainly no black letter law on the side of the Mendoza, but I would recognize that there are old cases and not, and if this court views it as helpful to inquire of the New York Court of Appeals, I would certainly endorse that. Thank you. Thank you, Your Honors. Thank you both for lively argument. We'll reserve decision.